IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cr. No.  19-2072-MV |
| | ) | |
| **TAVIS WASHBURN**, | ) | |
| | ) | |
| Defendant. | ) | |

<u>UNITED STATES' SENTENCING MEMORANDUM</u>

The United States submits this sentencing memorandum respectfully requesting that the Court accept the plea agreement and sentence the defendant, Tavis Washburn, to a sentence within the stipulated sentencing range of 71 to 120 months of imprisonment.  In support, the United States asserts the following:

<u>BACKGROUND</u>

On February 15, 2018, Navajo Nation police received emergency calls about a motor vehicle crash that occurred in Littlewater, New Mexico.  (PSR ¶ 12.)  According to the witnesses, a red Kia Spectra was driving south on Highway 491, at a high rate of speed, when it collided with a black GMC Sierra truck, which was turning right out of a gas station parking lot onto the highway.  (PSR ¶ 12-13.)  The driver of the Kia was later identified as the defendant, Tavis Washburn.  (PSR ¶ 13.)

At the time of the crash, Defendant was heavily intoxicated and driving far in excess of the speed limit.  One witness, L.B., reported that, shortly before the crash, Defendant drove up behind her and began tailing her.  (Governments Exhibit 1 at 2.)  Defendant then moved into the

left lane to pass L.B.  As Defendant passed L.B., he hit the raised concrete median, creating sparks.  (*Id.*)  L.B. described Defendant as driving very fast.  (*Id.*)

The Navajo Nation police officer who responded to the scene observed empty liquor bottles in Defendant's vehicle.  (PSR ¶ 17.)  Defendant also had a strong odor of alcohol coming from his person.  (PSR ¶ 16.)  A blood alcohol test taken at the hospital after the crash indicated Defendant had a blood alcohol level of .258, which is well over the legal limit.  (PSR ¶ 23.)

There were two other passengers in Defendant's car at the time of the crash: his adult brother John Doe 1, and Defendant's two-year-old son, John Doe 2.  (PSR ¶ 13.)  John Doe 1 died as a result of the crash.  (PSR ¶ 21.)  Defendant's son suffered serious bodily injury, including a broken left leg, fractured left arm, liver lacerations, and two small pneumothorax. (PSR ¶ 22.)

Two independent accident reconstruction experts confirmed that Defendant's reckless driving caused the crash.  In April 2018, New Mexico State Police Patrolman Stanley Lundy submitted an accident reconstruction report.  (Government's Exhibit 2.)  Based on the available data, Officer Lundy determined that Defendant was driving between 79-85 mph at the time of impact.  (*Id.* at 8-9.)  This would have been approximately 35-40 mph over the posted speed limit of 45 mph.  (*Id.* at 6.)  In April 2019, accident reconstruction expert David Torres created a simulation of the crash.  (PSR ¶ 26.)  Mr. Torres confirmed that Defendant was driving well over the speed limit at the time of the collision.  Mr. Torres calculated the Defendant's speed as "in the range of 79 mph."  (*Id.*)  While Patrolman Lundy and Mr. Torres disagreed about the relative

fault of the driver of the black truck, they both concluded that Defendant's speeding and recklessness was a contributing cause of the crash.[1]

On July 12, 2019, Defendant pled guilty to an information charging him with Involuntary Manslaughter, in violation of 18 U.S.C. §§ 1153 and 1112, and Child Abuse, in violation of 18 U.S.C. § 1153(b) and NMSA § 30-6-1.  (Doc. 24.)   In entering the plea agreement, Defendant admitted he was intoxicated and speeding at the time of the crash.  (Doc. 24 ¶ 9.)

THE SENTENCING GUIDELINES CALCULATION

On September 10, 2019, United States probation issued a Presentence Report ("PSR") calculating Defendant's guideline range for Count 1 as 30-37 months of imprisonment. (PSR ¶ 103.)  Probation further determined that there is no analogous guideline governing Count 2. (PSR ¶ 53-54.)  The government is not contesting the guideline calculations contained in the PSR.

PLEA AGREEMENT

On October 24, 2018, the United States filed a complaint charging Defendant with Involuntary Manslaughter, in violation of 18 U.S.C. §§ 1153 and 1112, and Assault of a Minor Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(6).  (Doc. 1.)  If he had been convicted of these charges, Defendant would have been facing a mandatory minimum of 10 years of imprisonment on Count 2 alone.  18 U.S.C. § 3559(f)(3).  By entering the plea agreement, the defendant meaningfully reduced his sentencing exposure.

The government respectfully requests the Court accept this agreement.  As the Supreme Court has recognized, "[t]he potential to conserve valuable prosecutorial resources and for

---

[1] Patrolman Lundy believes that Defendant was the sole cause of the crash.  Mr. Torres, however, believes that the driver of the black truck also contributed to the crash by failing to yield when turning onto the highway.  (PSR ¶ 26.)

defendants to admit their crimes and receive more favorable terms at sentencing means that a plea agreement can benefit both parties." *Missouri v. Frye*, 132 U.S. 1399, 1407 (2012).  Parties in a criminal case must assess the likely outcome of motions and trial practice.  Defendants in particular must weigh their tolerance for the risk of losing a trial against the benefits of a negotiated settlement.  Likewise, counsel for the United States must weigh the risks of proceeding to trial.

In negotiating Defendant's plea agreement, the United States considered the strength evidence, the views of the victims, as well as considerations of fairness.  The evidence against Defendant is strong.  Both accident reconstruction experts concluded that Defendant's reckless driving caused the crash.  In addition, there is no dispute that Defendant's minor child suffered serious injuries, which required the child to be airlifted to the hospital.  (PSR ¶ 22.)  However, both of the victims in this case are related to Defendant.  Neither victim favored prosecution. (PSR ¶ 32, 39.)  In addition, the two accident reconstruction experts had differing views about whether Defendant was the sole, or only the contributing cause, of the collision.  Given this disagreement, the government has not pursued charges against the other driver.  The proposed plea agreement recognizes the seriousness of Defendant's conduct while also allowing the Court to avoid unwarranted sentencing disparities.  Specifically, the proposed plea agreement allows the Court to sentence Defendant below what would have been the mandatory minimum had the government secured a conviction at trial.  The United States asks this Court to accept Defendant's plea agreement.

## LAW

As this Court is well-aware, the United States Sentencing Guidelines are advisory.  *See United States v. Booker*, 543 U.S. 220, 234 (2005).  In determining a sentence, the district court

4

must consider both the Guidelines and the factors set forth in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 51 (2007). Under this framework, an appropriate sentence is one that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence to criminal conduct, protects the public from further crimes of the defendant, and provides the defendant with needed educational or vocational training, medical care or other correctional treatment. 18 U.S.C. § 3553(a)(2)(A-D); *Booker*, 543 U.S. at 261-62. Specific factors relevant to the sentencing analysis include the nature and circumstances of the offense and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1-7).

<u>ARGUMENT</u>

Defendant has pled guilty to drunkenly causing a motor vehicle crash that killed his brother and seriously injured his minor child. The crime has had a severe impact on Defendant's and John Doe 1's family. (PSR ¶¶ 30-39.) When John Doe 1 died, the family lost a beloved relative. (PSR ¶ 30.) In addition, Defendant's son suffered grave injuries as a result of the crash. These injuries have affected John Doe 2's development. (PSR ¶ 34.) According to his mother, John Doe 2's left leg bones have not grown at the same rate as his right leg bones, resulting in his hips being uneven. (*Id.*) At this time, it is not clear if this anomaly will impact John Doe 2's movement or require further treatment. (*Id.*)

All of this harm could have been avoided had Defendant refrained from drinking and driving. There is no mitigating excuse for Defendant's conduct. At the time of the crash, Defendant's blood alcohol level was roughly three times the legal limit. (PSR ¶ 23.) Adding to the danger Defendant was driving approximately 35-40 miles over the speed limit. (PSR ¶ 26.) He was a danger to everyone on the roadway that night.

On top of these aggravating factors, this is not Defendant's first criminal conviction related to drinking and driving.    In June 2017, San Juan County police stopped Defendant for driving without insurance.  (PSR ¶ 57.)  Defendant's wife and one year old child, John Doe 2, were riding in the car with him.  (*Id.*)  The officer who initiated the traffic stop immediately noticed that Defendant appeared to be intoxicated.  There was a strong odor of alcohol coming from the vehicle, Defendant was "very disoriented," and had slurred speech.  (*Id.*)  Breath alcohol tests indicated Defendant's alcohol level to be between .15 and .17, about two times the legal limit.  (*Id.*)  Defendant's wife told police that she advised Defendant not to drive, but did not want to argue with him.  (*Id.*)  As a result of this traffic stop, Defendant was charged with abuse of a child and aggravated driving while under the influence.  (*Id.*)

These charges should have been a wake-up call.  Unfortunately, they did not deter Defendant from drinking and driving.  While these charges were pending, Defendant committed the instant offense.  (*Id.*)

Defendant's decision to continue drinking and driving with this son in the car, while facing charges for the same conduct, demonstrates an alarming disregard for his son's health, wellbeing, and safety.  At the time of the instant offense, Defendant's son was only two years old.  John Doe 2 was, and continues to be, uniquely vulnerable to his father's alcohol abuse.  John Doe 2 could not object to his father drinking and could do nothing to protect himself from his father's behavior.  Defendant should have been taking care of John Doe 2.  Instead, he was exposing him to incredible danger.  The government asks that the Court consider these aggravating factors when determining the sentence in this case.

CONCLUSION

An sentence between 71-120 months is "sufficient, but not greater than necessary to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a).   WHEREFORE, the United States respectfully requests that this Court accept the plea agreement and sentence the Defendant in accordance with the plea agreement.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*Electronically filed on November 22, 2019*
ALLISON C. JAROS
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico  87103
(505) 346-7274 telephone
(505) 346-7296 fax

I HEREBY CERTIFY that on the 22nd
day of November, 2019, I filed the foregoing
pleading electronically through the CM/ECF
system, which caused counsel of record
to be served by electronic means on this date.

*/s/*
Allison C. Jaros
Assistant U.S. Attorney